UNITED TRANSIT COMPANY *vs.* PUBLIC UTILITY HEARING BOARD.

JULY 3, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

436

ROBERTS, J. This petition of the United Transit Company, hereinafter referred to as the Company, was filed with the public utility administrator on September 14, 1962, seeking relief provided for in sec. 7 of its charter as amended by P. L. 1959, chap. 144. The Company, in substance, seeks approval of an upward revision in its fares and of certain reductions in the service being maintained on designated routes as proposed in schedules attached to the petition. After a hearing the administrator on November 13, 1962 took affirmative action thereon and to that end issued two consecutively numbered orders, in one of which he approved the revised schedule of fares and in the other approved the proposed reductions in service on some twenty-nine bus routes. On November 23, 1962 Ronald Laurens Andrew Card undertook to prosecute a separate appeal to the public utility hearing board from each of the orders issued as aforesaid.

Thereafter the public utility hearing board during hearing on the appeal dismissed for want of jurisdiction the appeal of the appellant Card from the order of the administrator approving the revised fare schedules. The hearing board then heard and in part sustained the appeal from the order of the administrator approving the proposed reductions in service on certain of the routes designated but in part overruled that order by denying approval of such service reductions on four routes that are specified in the decision. The matter came before this court on the purported appeal of the Company from the order of the hearing board

overruling that portion of the order of the administrator wherein he approved the reduction in service on the indicated routes.

The circumstances here are such, in our opinion, as to make it desirable, if not necessary, for this court to make clear the limitations on the jurisdiction of the hearing board to hear and determine appeals taken from orders of the administrator pursuant to §39-5-9. For that reason we are constrained to raise, sua sponte, a question as to its jurisdiction to entertain the appeal taken from the administrator's order purporting to give approval to the proposed service curtailments independently of his approval of the proposed upward rate revision given after his consideration of the curtailments in conjunction therewith. In our opinion the board lacked such jurisdiction, and its action thereon was null and void. We do not perceive that the administrator, in issuing the orders pursuant to his decision, did anything more than approve rate revisions after considering the minimizing effect thereon of the proposed service curtailments. His fragmentation of the order, in our opinion, had no effect upon its character as an order fixing a rate.

General laws 1956, §39-5-1, provides that any person aggrieved by an order of the administrator "fixing any rate, toll, charge * * * may appeal to the supreme court for a reversal of such order on the ground that the rate, toll, charge * * * fixed in the order are unlawful or unreasonable." It is clear from the above-quoted language that the legislature intended that all appeals from orders wherein a rate is fixed were to be taken to this court, including any order approving a rate that has been established upon a consideration, inter alia, of service curtailments.

On the other hand, the legislature conferred upon the hearing board a substantially restricted jurisdiction to hear appeals from orders of the administrator. In §39-5-9 it is provided that appeals are to be taken to the hearing board only from orders of the administrator "other than a deci-

sion or order fixing any rate * * *." When §§39-5-1 and 39-5-9 are read together, it becomes clear that the intent of the legislature was to preclude any review by the hearing board of such orders of the administrator as involved rate fixing whether such fixing was by direct action or by indirection.

We are of the opinion, as already indicated, that the order of the administrator here, without regard to his fragmentation thereof, is in effect a rate revision on the basis of the proposed reductions in service. Its character as a rate order is unaffected by the manner of its formulation, and appealability therefrom is to be determined on the basis of its substance rather than its form. See *New England Tel. and Tel. Co.* v. *Kennelly,* 80 R. I. 253. We must reject any contention that the administrator may so divide an order as to confer jurisdiction upon the hearing board to review by indirection an order in which a rate was fixed.

Any doubt concerning the rate-fixing nature of the order of the administrator will be resolved by a consideration of the posture in which the matter was submitted to him and of the circumstances surrounding his issuance of the order. This petition was not filed pursuant to §39-3-11, which provides in general terms for the approval of proposed rate revisions by utilities. Rather, it was filed under a particular provision of the Company's charter, namely, sec. 7 (a) thereof as amended by the legislature in the 1959 act. Said sec. 7 (a) reads in pertinent part as follows: "Whenever the operating ratio, as herein-defined, of the United Transit Company for any six months' period ending on the last day of any quarterly period of any calendar year shall be greater than 94% or whenever the rate of return on the company's rate base, as herein defined, shall be below 5%, for any such six-months' period of time, the state administrator of public utilities shall, after investigation, and within 60 days after receipt of any petition filed by said United Transit Company for relief, *permit such revision in the company's*

*fare structure, or allow the company to reduce bus miles operated on non-profitable routes or any portion thereof, or the administrator shall authorize a combination of fare revisions and mileage reductions* in a manner and to the degree that will enable said United Transit Company to maintain an operating ratio of at least 94% or to secure a rate of return on the company's rate base of at least 5% for the next succeeding twelve calendar months from the date of the order so issued * * *." (italics ours)

It is to be noted then that the Company sought relief under sec. 7 (a) of its charter that would enable it to maintain an operating ratio of at least 94 per cent or to secure a rate of return on its rate base of at least 5 per cent. Upon a showing by the Company that it was unable to maintain the prescribed operating ratio or to secure the prescribed rate of return, the administrator must give relief, having discretion only to provide for such relief by way of one of three alternatives. He may provide for such relief, first, by permitting a revision in the fare schedule or, in the alternative, by allowing a reduction in the bus mileage operated on nonprofitable routes. As a third alternative the administrator may authorize a combination of fare revisions and mileage reductions in a manner and to the degree that will enable the Company to maintain the operating ratio or to secure the rate of return provided in sec. 7 (a).

In other words, upon making the appropriate findings the administrator must issue orders that will provide the relief contemplated by the statute. In these orders he may permit a fare reduction or a reduction in service on non-profitable routes, or he may authorize fare revisions with service reductions, whether the routes so affected were profitably operated or not. The third alternative contemplates the issuance of an order in which fare revisions are authorized on the basis of mileage reductions which, in our opinion, constitutes an order fixing a rate within the purview of §39-5-1.

In his decision the administrator made it clear that he acted to give the Company relief under sec. 7 (a) on the basis of combining an increase in the rates with a curtailment of service. At page 10 thereof he found "that the application of the revised fare schedule coupled with the program of service curtailments as proposed in the Company's petition of September 14, 1962, will provide Petitioner with an operating ratio not in excess of 94%, and will permit a rate of return on Petitioner's rate base slightly in excess of 5% * * *." The administrator then went on to state that he had no alternative other "than to permit the Company to revise its fare structure and to curtail its service schedules * * *."

In other words, it is clear from the language of the decision that the administrator intended to grant relief that would enable the Company to maintain the prescribed operating ratio and rate of return by authorizing it to combine fare revisions with mileage reductions. When his orders are examined in this light, the conclusion is inescapable that, despite their fragmentation, they constitute a single order approving fare revisions on the basis of the proposed service curtailments and that therefore the hearing board was without jurisdiction to hear and determine it, in whole or in part.

The appellant Card, in taking his appeal from the orders of the administrator to the hearing board, was in fact prosecuting his appeal in the wrong tribunal. We have heretofore held that a mistake of this kind was fatal to a right of appeal provided by statute in a particular tribunal. *Canzano v. McLaughlin,* 68 R. I. 22. It is clear, however, that he was attempting to pursue an appellate procedure that would enable him to prosecute in this court a further appeal from an adverse decision by the hearing board. While it is true that the procedure pursued by Card did not have the effect of bringing the orders of the administrator to this court for review, it is also true that by invoking the

provisions of §39-5-9 for a hearing de novo on the petition of the Company for relief under sec. 7 (a) of its charter, he was seeking, albeit circuitously, access to this court in order to obtain a review of the order of the administrator.

We are aware also that the mayors and the town council presidents of several of the municipalities served by the Company joined in filing a purported appeal to this court from the decision and order of the hearing board on the appeal of the appellant Card. Because, however, it is our opinion that the proceedings on the appeal of Card before the hearing board were in fact null and void, we are constrained to conclude that the appeal of these municipal officers is a nullity and can be given no further consideration by this court.

In the circumstances then we are confronted with a situation in which there has been a failure to pursue such appellate procedure as would serve to bring here for review the orders issued by the administrator pursuant to sec. 7 (a) of the charter. This failure to perfect such an appeal is a matter of substantial concern to us because the administrator's order involves directly the interest of the public in the maintenance of adequate mass transportation facilities.

The legislature, in amending the charter of the Company in 1959 by enacting chap. 144, declared therein that public policy required the maintenance of adequate transportation by private enterprise in the metropolitan area of Providence. To promote the public policy thus declared, the legislature provided in the preamble to chap. 144 that the Company "must be afforded an opportunity to preserve the company's credit by maintaining the company's income at a minimum level determined either upon an operating ratio formula * * * of at least 94% * * * or upon a rate of return of not less than 5% on the company's rate base * * *." The legislature then, acting directly to give effect to the policy thus declared, amended sec. 7 (a) of the char-

ter so as to mandate the administrator to give the Company in an appropriate case relief in accordance with the alternative provisions therefor contained in sec. 7 (a). The legislative intent to afford the Company fiscal stability is clear.

Upon a showing by the Company that it had been unable to maintain the designated operating ratio during the time period prescribed in the act, the administrator must so act as to enable it to attain and maintain that operating ratio through the issuance of a lawful and reasonable order granting relief in the alternative as provided in said sec. 7 (a). Nothing contained therein is persuasive that the legislature intended that the validity of such an order would not be subject to review by this court. In the absence of a provision in that section relating to appealability, it must be conclusively presumed that the legislature contemplated that appeals under sec. 7 (a) which would affect the rate structures should be taken pursuant to §39-5-1.

In providing for a review of the administrator's rate orders in §39-5-1, the legislature intended clearly to restrict this court's authority to determining the legality and reasonableness of the order so issued. An exercise of the rate-fixing power that was intended by the legislature to be vested solely in the administrator is made subject to review in this court only on the issue of action in excess of the authority conferred or action so arbitrary as to be unreasonable. While the legislature did not contemplate that this court would exercise the rate-fixing power, it clearly did intend, however, to authorize this court to confine such action on the part of the administrator within the limits of the power conferred upon him and contemplated an exercise of the reviewing power by this court whenever required in the public interest. It is our opinion that the legislature disclosed this intention when it provided in §39-5-2 that this court "is hereby given authority to regulate the practice and procedure in such appeal by such rules as it may see fit to make * * *."

There is nothing in the instant case that requires us to construe this particular provision of §39-5-2 for the purpose of determining whether it contemplates the promulgation by the supreme court of formal rules of procedure applicable to all appeals from orders of the administrator or merely confers upon this court specific authority to dispense from time to time with formal compliance by appellants under the statutory provisions concerning the manner and form in which such appeals should be prosecuted. It suffices here to say that this provision of §39-5-2 discloses a legislative intent that the statutory requirement for prosecuting such appeals should be construed liberally so as to accomplish the purpose thereof, that is, to enable an appellant to obtain in the supreme court a review of the validity of such orders whenever it is in the public interest to do so.

In such circumstances it is unthinkable that a determination by this court as to the lawfulness and reasonableness of such an order would be precluded by the misleading effect of the fragmentation thereof upon an appellant not versed in the law. It is not to be presumed that the legislature, after providing for relief by administrative action directly impinging upon the public interest, intended to bar a review thereof by this court because of noncompliance with technical appellate procedures.

Because we take this view we are persuaded that in the circumstances justice requires that we pass upon the validity of the instant order of the administrator even though technically no appeal therefrom has been perfected in this court. It seems clear that if the order is either unlawful or unreasonable the riding public should not be compelled to pay the fare increase approved therein or be deprived of the service, the discontinuance of which was approved therein. Similarly, the Company is entitled to know whether the administrator has complied with the mandate of the enactment by granting to it such of the relief prescribed in

sec. 7 (a) as will enable it to acquire lawfully the minimum financial stability contemplated in chap. 144 and therein declared to be a matter of public policy. Therefore, we now consider and determine the appeal of Card from the order of the administrator as if it had been prosecuted by him to this court in the manner and form provided by the pertinent statute.

Upon an appeal to this court from an order of the administrator taken pursuant to §39-5-1, it becomes our duty to pass upon the lawfulness and reasonableness of the challenged order without attempting to make original findings of fact with respect thereto. *United Electric Rys.* v. *Kennelly,* 80 R. I. 64. On such an appeal we will not disturb the findings made by the administrator when it appears from the record that they are fairly and substantially supported by legal evidence. *Town of Jamestown* v. *Kennelly,* 81 R. I. 177. It is settled that the administrator should make such findings of fact as will be sufficient to demonstrate that the order is based upon a consideration of legal evidence in the record and is not arbitrary, and obviously his findings should be stated with such substance as to be consistent with the scope and effect of the order issued. *New England Tel. and Tel. Co.* v. *Kennelly,* 81 R. I. 1. However, this is not to say that the necessary findings of fact may not be implied from the language and actions of the administrator even where he has failed to state his findings in express terms. *Yellow Cab Co.* v. *Public Utility Hearing Board,* 79 R. I. 507.

Whether the issuance of the order in this case constitutes a valid exercise of the administrator's authority to approve a rate revision turns upon a showing that the Company had been unable to maintain the established operating ratio for the prescribed period of six months. If such finding is not expressly made in the instant record, the action of the administrator in granting the relief provided in sec. 7 (a) clearly implies such finding. There is in the record evidence

that supports this view. The appellant Card concedes, in substance, that certain exhibits put into evidence by the Company establish and tend to prove its inability to attain the prescribed operating ratio and also tend to prove that the ratio during the prescribed six-month period was 101.13 per cent. The appellant Card did question the weight that should be given to this evidence, but it is well settled that we will not, upon reviewing such an order, pass upon the weight of the evidence. *Town of Jamestown* v. *Kennelly, supra.*

It is argued also on behalf of the appellant Card that the approval of the proposed service curtailments is in excess of the authority conferred upon the administrator in sec. 7 (a) to the extent that it authorizes such curtailments on routes that the Company had operated at a profit. This contention is based upon those provisions of sec. 7 (a) which confer upon the administrator authority to approve service curtailments only on routes operated by the Company at a loss. We are unable to agree. As we have noted, sec. 7 (a) provides for relief in the alternative. Where relief is ordered in the form of service curtailments only, it is conceded that the authority of the administrator to approve such curtailments is limited to those routes that have been unprofitably operated. However, where the relief is to be in the form of a combination of fare increases and mileage reductions, the authority of the administrator to approve the curtailments is not, in our opinion, limited to routes that were unprofitably operated. We perceive nothing in the statute that so provides either in express terms or by necessary implication. It is, therefore, our opinion that in issuing the instant order the administrator acted within the statutory authority conferred upon him and that the order is therefore lawful within the purview of §39-5-1.

There remains the question as to the reasonableness of the order. On this issue the contentions of the appellant Card are twofold. He contends, first, as we understand him,

that the upward revision in the fare structure approved in the order would in itself be sufficient to enable the Company to attain the prescribed operating ratio and that therefore to the extent that the order approves service curtailments it is unreasonable. This is to argue, in effect, that the approval of the fare increase, when coupled with service reductions, will enable the Company to attain an operating ratio so favorable as to be unreasonable when viewed in the light of the public interest. With this we cannot agree for the reason that the record contains no evidence which tends to establish that the Company under this order would attain an operating ratio so favorable as to be unreasonable. That such might be the consequences of the order in the instant situation is a matter of pure speculation, in which this court will not indulge.

The appellant questions also the reasonableness of the order by arguing that while some minor benefits might accrue therefrom to the Company, it does violence to the overriding public interest in the maintenance of adequate public transportation, a matter of public policy by legislative declaration. It must be conceded that there will be some adverse effect resulting from the service curtailments on the interests of that part of the public who would use such service on holidays, Sundays, and nights, who, the record indicates, are few in number. However, this adverse effect must be viewed in the light of the adverse effect upon the riding public generally that results from the fare increases.

It is obvious in the instant case that the administrator was approving the proposed reductions in service for the purpose of minimizing the fare increases that would be otherwise necessary to enable the Company to attain the operating ratio prescribed in sec. 7 (a). On the record here we cannot say that the administrator approved the proposed service reductions for any reason other than to ameliorate the impact of a substantial increase in fares upon

the riding public generally. For this reason we are unable to agree that the approval of the order was arbitrary and therefore unreasonable.

The appeal of the appellant Card is denied and dismissed, the order of the administrator from which said appeal is deemed to have been lawfully taken is affirmed, the appeals of the Company and of certain mayors and other municipal officers purportedly taken from the order of the respondent board to this court are dismissed pro forma, and the record is sent back to the respondent board with direction to deny and dismiss for want of jurisdiction the appeal thereto of the appellant Card and to return the record to the administrator with an endorsement thereon of the board's action pursuant to this opinion.

*Armstrong, Gibbons & Lodge, Walter F. Gibbons, Joseph G. Kinder,* for petitioner.

*Julius C. Michaelson, J. Joseph Nugent,* Attorney General, for respondent.