259 A.2d 671.

Nicholas L. DiSalvo *vs.* James F. Williamson, *Registrar*.

DECEMBER 3, 1969.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Kelleher, J. This is a petition for certiorari brought pursuant to the provisions of G. L. 1956, §42-35-16, as amended by P. L. 1966, chap. 112, sec. 1, the Administrative Procedures Act, whereby the Registrar of Motor Vehicles seeks a review of a judgment entered by the Superior Court

reversing the registrar's order which had suspended the respondent's driver's license because he had refused to submit to a breathalyzer test. We issued the writ, and the pertinent records of this cause have been certified to us. Hereafter we shall refer to the petitioner as the registrar and the respondent as either DiSalvo or the motorist.

The record shows that about 1:15 a.m. on September 5, 1968, DiSalvo was arrested in the Town of Barrington on County Road for operating a motor vehicle while under the influence of intoxicating liquor—a violation of §31-27-2, as amended by P. L. 1959, chap. 101, sec. 1. At the scene of his arrest, DiSalvo was asked if he would submit to a breathalyzer test and he refused. He was taken to police headquarters where he was again asked if he would take the test. He once again refused. A report of DiSalvo's refusal was forwarded to the registrar who thereupon suspended DiSalvo's driver's license for a period of six months. The registrar's actions were based on the appropriate provisions of §31-27-2.1—the so-called Implied Consent Law. (See appendix.)

Thereafter, the motorist requested a hearing on his suspension. The hearing was held and the registrar found that the arresting officer had reasonable grounds to believe that DiSalvo was driving while under the influence of liquor and that, after having been accorded his rights under the statute, the motorist refused to take the test. The registrar affirmed the suspension and DiSalvo appealed this action to the Superior Court. The trial justice, in reversing the suspension order, held that the mere statement by a licensee that he will not take the breathalyzer test does not constitute a "refusal to submit" under the terms of §31-27-2.1. A refusal, he declared, does not occur until such time as when the test is about to be administered and the driver then refuses to submit. There can be no refusal, he said, until

an attempt is made to administer the test. We think the trial court has erroneously construed the statute.

An examination of the provisions of the Implied Consent Statute does not disclose any language which would warrant the conclusion that the legislature intended that the police must first make an actual attempt to administer the breathalyzer test to a recalcitrant motorist before his previous refusal to cooperate can be deemed to be a refusal under the statute. Here the legislative language is clear and expresses a definite and sensible meaning. This being so, we cannot search behind the statute for a different meaning. *Woods* v. *Safety System, Inc.,* 102 R. I. 493, 232 A.2d 121. There is absolutely nothing in the Implied Consent Law that compels a police officer to do anything more with an arrestee, who he believes has been driving on a public highway while under the influence of liquor, than to ask the motorist if he will submit to the requisite sobriety test; inform him of his right to be examined by a physician of his choice in accordance with the terms of §31-27-2; and tell the driver, should he refuse to take the test, he runs the risk of having his license suspended for a period of six months. Once DiSalvo told the arresting officer he would not submit to the breathalyzer test, his license was subject to suspension. There was no need to prepare the breathalyzer or summon a duly qualified individual who would give the test.

Here DiSalvo was given two opportunities to comply with the statute. It is clear from the record that the Barrington police on two separate occasions asked DiSalvo in clear and unmistakable language to take the required sobriety test. Each time he refused. His refusals obviated the necessity by the police of making any further preparations relative to giving the motorist an examination.

It is unquestioned that the legislature enacted the Implied Consent Law with the goal of reducing the carnage

occurring on our highways which is attributable to the persons who imbibe alcohol and then drive. As we have said so many times in the past, we do not believe that the legislature intends to exercise its legislative power to reach an irrational result. Neither does this court, nor do we believe the legislature, expect the police officers of this state to engage in an exercise of futility. After DiSalvo expressed an unwillingness to submit to the breathalyzer examination, it would be the height of folly to require the police to break out the machine and summon a certified operator. It is to be noted that the Implied Consent Law permits the chemical testing of either the motorist's breath, blood or urine. It would be ridiculous to expect that a police department, which might use the blood-testing technique after receiving a flat refusal from a suspected motorist, would then be forced to summon a physician to the station and have the doctor ask the motorist for permission to withdraw a specimen of his blood before there might be a statutory refusal which would lead to a suspension. Another reason why the police may acquiesce in the refusal of a motorist to take a chemical test to which, as a matter of law, he is considered to have given his consent, is the undoubted legislative aim to avoid the violence which might ensue from all attempts to give a forced test to an obstinate inebriate. See *Bush* v. *Bright,* 71 Cal. Rptr. 123, 264 Cal.App.2d 788.

The drinking driver who is arrested has a choice. He may take the test and hope for the best. On the other hand, he may refuse. Once he refuses, he takes a calculated risk that he will have a six-month vacation from his driving chores. The choice is his. To read into the Implied Consent Law the added condition that the police must attempt to administer the test to a driver who has already said "no" adds something that is not found in the plain language of

the statute. Such a view could well frustrate the legislature's efforts to promote highway safety.

There is some indication in the record that the Town of Barrington does not own a breathalyzer but shares the use of one with two of its neighboring communities—Warren and Bristol. It appears that at the time of DiSalvo's arrest, the machine was in Bristol. There is a cooperative arrangement existing between the three municipalities whereby when one needs the use of the machine, it may, if necessary, borrow from one of the other towns the services of a police officer who has been certified as being a qualified operator by the state department of health.

DiSalvo now claims his refusal was justified because, at the time he was asked to submit to the test, the Barrington police did not have a breathalyzer at its police headquarters. Unless we rule that a police department has a machine present ready to be used in all cases, the motorist asserts that the police could embark on a program of entrapment. It would be possible, DiSalvo says, for a police officer whose department does not have a machine in its possession to ask a motorist to take a test and, if he refuses, to set in motion the administrative machinery which would lead to the suspension of the motorist's driving permit.

We would first point out that this argument appears to be an afterthought on the part of DiSalvo. Nowhere during the hearing before the registrar did he state that he did not take the examination because of the unavailability of the breathalyzer. He insisted at the hearing that he was never asked to take the test.

Turning to the Implied Consent Law, we can discover nothing in its provisions which demands that each city or town have present in each police station a breathalyzer. Nor do we think much of the motorist's suspicion that the role of the law enforcement agencies in this state is to embark on a program of seeking the suppression of driving

licenses of all the motoring public. Rather, we rely on a well-established presumption that, in absence of evidence to the contrary, those responsible in providing services to the public will carry out their duties in a proper, careful and prudent manner. *Judah* v. *State,* Del. 234 A.2d 910. Furthermore, it would be totally unrealistic to demand that a breathalyzer, or some similar machine, be maintained in each police station in this state with a qualified operator on duty 24 hours a day. The application of a sobriety test is not a haphazard affair but governed by reasonable regulations specifically set forth in the statute.[1]

There is one other aspect of the trial court's reversal of the registrar's suspension that requires consideration. For a proper understanding of this issue, we shall set forth in full the registrar's decision:

> "Nicholas L. DiSalvo
> 595 Maple Avenue
> Barrington, Rhode Island
>            vs
> James F. Williamson
> Registrar of Motor Vehicles
> "This matter came to be heard after the introduction of evidence on behalf of the Registrar and the complainant.

[1]Section 31-27-2 (b) provides that in any criminal prosecution, evidence as to the amount of alcohol in a defendant's blood at the time alleged as shown by a chemical analysis of his breath, blood, urine or other bodily substance shall be admitted as competent evidence provided that the following conditions are complied with: (1) a true copy of the result of the test is mailed within 24 hours of the test to the person submitting to the test; (2) additional evidence is presented which bears on the question as to whether or not the motorist was under the influence of intoxicating liquor; (3) the test was conducted according to methods and with equipment approved by the state department of health and by an individual possessing a valid permit issued by the department; (4) the equipment used was tested for accuracy within the 30 days preceding the test by qualified personnel; and (5) the motorist was given the opportunity to have an additional chemical test made.

Section 31-27-2.1 states that in those instances where a blood test is to be used only a physician or registered nurse may withdraw the blood.

"I find as a fact that the arresting officer had reasonable grounds to believe that the complainant had been driving while under the influence of liquor. I find as a fact that the complainant was informed of his constitutional rights and of his rights under the statutes, (31-27-2, 31-27-2.1 & 31-27-3), on implied consent—namely, that he could call a physician of his own for additional tests on the breathalyzer or blood test and urine test. I find as a fact that the complainant refused, after having been informed of the penalty of six (6) months' suspension of his license upon refusal; therefore, by the preponderance of the evidence, it is a conclusion of the Registrar that the decision to suspend the license is affirmed.

"s/
James F. Williamson
Registrar"

In his decision, the registrar referred to the respondent as the "complainant" and found as a fact that the "complainant" refused. The trial justice observed that there was nothing in the decision to indicate who the "complainant" was or what the "complainant" refused to do. The statute, the court pointed out, refers to a "defendant" and further refers to a motorist at the hearing as the "arrested person." Because of these inaccuracies, the trial court held that the registrar's findings were not sufficient in law to sustain the suspension. It is obvious from a reading of the decision that the complainant is DiSalvo. It is also quite apparent what DiSalvo refused to do. Section 31-27-2.1(b) requires the registrar in affirming a suspension to make three findings including "* * * that said person while under arrest refused to submit to the test upon the request of the law enforcement officer * * *." Implicit in his affirmation of the suspension was a finding that DiSalvo had refused to take the test. *United Transit Co.* v. *Public Utility Hearing Board*, 96 R. I. 435, 192 A.2d 423. The registrar's failure to complete the phrase "refused to submit" is a mere grammatical oversight which in no way affects the validity of his suspension order.

The petition for certiorari is granted. The decision of the Superior Court overruling the decision of the petitioner is quashed and the records certified to this court are ordered returned to the Superior Court with our decision endorsed thereon.

### Appendix

Section 31-27-2.1 in pertinent part provides that:

"(a) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, to a chemical test of his breath, blood, or urine for the purpose of determining the alcoholic content of his blood provided such test shall be administered at the direction of a law enforcement officer having reasonable grounds to believe such person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. * * * If such person having been placed under arrest refuses upon the request of such law enforcement officer to submit to a chemical test * * * none shall be given, but the registrar, upon a receipt of a sworn report of such law enforcement officer that he had reasonable grounds to believe the arrested person had been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor, that the defendant had been informed of his rights in accordance with §31-27-3, that the defendant had been informed of the penalties incurred as a result of non-compliance with this section, and that the person had refused to submit to the test upon the request of the law enforcement officer, shall suspend his license or permit to drive and any nonresident operating privilege for a period of six (6) months from the date of the alleged violation * * *."

*Leo Patrick McGowan, Robert G. Crouchley,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *Charles G. Edwards,* Assistant Attorney General, for respondent.