391 A.2d 107.

STATE *v.* JAMES L. BERKER, SR.

AUGUST 24, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

850

BEVILACQUA, C.J.    James Berker was tried before a justice of the Superior Court and convicted of driving under the influence of liquor in violation of G.L. 1956 (1968 Reenactment) §31-27-2. He is before us challenging the legality of his arrest and the admissibility into evidence of the breathalyzer results seized following that arrest.

On March 18, 1973, at approximately 1:41 a.m., Warwick police officers were dispatched to the scene of a two-car accident on Narragansett Parkway. Officer Lytle testified that when he arrived, defendant staggered towards him. The officer stated that defendant's eyes were bloodshot, his speech slurred, and his manner argumentative. The defendant moved back and forth between the officer and his vehicle twice but failed to produce the license and registration requested by the officer. As defendant moved towards his vehicle for the third time, Officer Lytle placed him under arrest. The officer testified that the arrest was prompted by his belief that defendant "had been operating [his vehicle] under the influence of alcohol * * *."

The defendant was advised of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and under §31-27-2.1[1] which provides in pertinent part:

[1]This section has been amended by P.L. 1973, ch. 213, §1 and P.L. 1974, ch. 209, §1. We recite the unamended version applicable at the time of the events described herein.

"(a) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, to a chemical test of his breath, blood, or urine for the purpose of determining the alcoholic content of his blood provided such test shall be administered at the direction of a law enforcement officer having reasonable grounds to believe such person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. * * * The person tested shall be permitted to have a physician of his own choosing and at his own expense administer a chemical test of his breath, blood or urine in addition to the one administered at the direction of the law enforcement officer. If such person having been placed under arrest refuses upon the request of such law enforcement officer to submit to a chemical test as provided in §31-27-2, as amended, none shall be given, but the registrar, upon receipt of a sworn report of such law enforcement officer that he had reasonable grounds to believe the arrested person had been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor, that the defendant had been informed of his rights in accordance with §31-27-3, that the defendant had been informed of the penalties incurred as a result of non-compliance with this section, and that the person had refused to submit to the test upon the request of the law enforcement officer, shall suspend his license or permit to drive and any non-resident operating privilege for a period of six (6) months from the date of the alleged violation * * *."

The officer testified that defendant consented at the scene to administration of the breathalyzer examination. The defendant was then transported to the Warwick police station where he was permitted to speak with his attorney by telephone. Shortly thereafter, defendant was again advised of his rights under *Miranda* and under §31-27-2.1. He again

consented to administration of the breathalyzer examination. One test administered at approximately 3:03 a.m. indicated a blood alcohol level of .16 percent. A second test administered at 3:35 a.m. indicated a blood alcohol level of .17 percent.[2] The defendant was then formally charged with violation of §31-27-2. A certified copy of the test results was mailed to defendant at 5:30 a.m.

The defendant appeared before a Justice of the Peace, Joseph Gallucci, at a special session of the Third Division District Court. Mr. Gallucci at that time executed a jurat to the complaint submitted by Douglas Brush, Captain of the Warwick police, charging defendant with violation of §31-27-2. The defendant was then released on $500 personal recognizance. The case was transferred to Superior Court where defendant was tried and adjudged guilty of the offense.

I

The defendant initially contends that the trial justice erred in refusing to grant his motion to dismiss the complaint on the grounds that an arrest warrant issued upon a complaint to a magistrate who anticipates a fee for conducting an arraignment thereon does not comport with the right accorded a criminal defendant under both Federal and State Constitutions to adjudication of his cause before a neutral and detached magistrate.

The defendant relies upon *Tumey* v. *Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927), to support his claim. In *Tumey*, the Supreme Court stated that a defendant is unconstitutionally deprived of his right to due process of law when his liberty or property is subject "to the *judgment* of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him * * *." (Emphasis added.) *Id.* at 523, 47 S. Ct. at 441, 71 L. Ed. 754; *Connally* v. *Georgia*, 429 U.S. 245, 249, 97 S. Ct. 546, 548, 50 L. Ed. 2d 444, 447 (1977).

---

[2] A blood alcohol level of .10 percent creates a presumption of intoxication. §31-27-2.1(c)(3).

This is clearly not the situation in the case at bar. The defendant had been placed under arrest at the scene of the accident. The magistrate, therefore, was not called upon to adjudge the sufficiency of the complaint so as to support issuance of an arrest warrant. By executing the jurat at the end of the complaint, he merely attested to the time, place, and person before whom the complaint was sworn in accordance with the mandate of G.L. 1956 (1969 Reenactment) §12-6-1 which requires:

> "Whenever any complaint shall be made * * * to any justice of the peace * * * he shall examine the complainant under oath or affirmation and require their statements to be reduced to writing and be subscribed and sworn to by the persons making them."

As we noted in *State* v. *Winsor,* 98 R.I. 447, 449, 204 A.2d 427, 428 (1964), "Section 12-6-1 prescribed no judicial or quasi-judicial duties and requires no finding of probable cause." The duties imposed thereunder are purely ministerial and therefore outside the scope of activity circumscribed in *Tumey. See Ward* v. *Village of Monroeville,* 409 U.S. 57, 62 n.2, 93 S. Ct. 80, 84 n.2, 34 L. Ed. 2d 267, 272 n.2 (1972).

## II

The defendant also challenges the legality of his arrest on constitutional and statutory grounds. General Laws 1956 (1969 Reenactment) §12-7-3 specifies those situations in which a warrantless arrest for commission of a misdemeanor may be effected:

> "A peace officer may without a warrant arrest a person for a misdemeanor, whenever:
> "(a) The officer has reasonable ground to believe that a misdemeanor has been or is being committed in his presence and that the person to be arrested has committed or is committing it.
> "(b) The person to be arrested in fact has committed or is committing a misdemeanor in the presence of the officer, and in such case it shall be immaterial that

the officer did not believe him guilty or on unreasonable ground entertained belief in his guilt.

"(c) The officer has reasonable ground to believe that the person to be arrested has committed a misdemeanor and either has fled from the scene of the crime or is a nonresident of this state and cannot be arrested later.

"Provided, an arrest under paragraph (a) or paragraph (b) of this section must be made within twenty-four hours after the commission of the misdemeanor, but an arrest under paragraph (c) may be made at any time."

It is undisputed that the misdemeanor at issue, driving under the influence of alcohol, was not committed in the presence of a peace officer. We, therefore, direct our discussion to subsection (c) of the statute.

The defendant asserts that because subsection (c) does not require that the arresting officer have probable cause to believe that the offense has been or is being committed *in his presence,* it unconstitutionally infringes upon the right of persons to be free from unreasonable seizure.[3] U.S. Const. amend. XIV, §1; R.I. Const. art. 1, §6, §23. Although this issue has been extensively litigated in other jurisdictions, *see* 6A C.J.S. *Arrest* §20(c) at 45-46 (1975), it is a question of first impression in Rhode Island.

---

[3]Through enactment of P.L. 1977, ch. 71, §1, G.L. 1956 (1969 Reenactment) §12-7-3, was amended to read as follows:

"Arrest without warrant for misdemeanor or petty misdemeanor. — A peace officer may, without a warrant, arrest a person if the officer has reasonable cause to believe that such person is committing or has committed a misdemeanor or a petty misdemeanor, and the officer has reasonable ground to believe that such person cannot be arrested later or may cause injury to himself or others or loss or damage to property unless immediately arrested."

Because the amended statute dispenses with the presence requirement, our discussion will be helpful in addressing future challenges.

It is clear that the lawfulness of a state arrest by state police is governed by state law so long as that law is not inconsistent with federal constitutional standards. *Ker* v. *California*, 374 U.S. 23, 34, 83 S. Ct. 1623, 1630, 10 L. Ed. 2d 726, 738 (1963); *Diamond* v. *Marland*, 395 F. Supp. 432, 440 (S.D. Georgia 1975), *citing Bergstralh* v. *Lowe*, 504 F.2d 1276, 1278 (9th Cir. 1974), *cert. denied*, 420 U.S. 930, 95 S. Ct. 1131, 43 L. Ed. 2d 402 (1975). In *Draper* v. *United States*, 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959), the Supreme Court, considering the validity of an arrest pursuant to 26 U.S.C. §7607, which authorized warrantless arrests for violations of laws relating to narcotic drugs, described the constitutional standard:

> "The crucial question * * * is whether knowledge of the related facts and circumstances gave Marsh "probable cause" within the meaning of the Fourth Amendment and "reasonable grounds" within the meaning of * * * [the statute] to believe that petitioner had committed or was committing a violation of the narcotics laws. *Id.* at 310, 79 S. Ct. at 331, 3 L. Ed. 2d at 330.

The court stated that probable cause or reasonable grounds to arrest within the meaning of the fourth amendment exists where the facts and circumstances within the knowledge of the arresting officer are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed by the person arrested. *Id.* at 313, 79 S. Ct. at 333, 3 L. Ed. 2d at 332, *quoting Carroll* v. *United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543, 555 (1924); *State* v. *McWeeney*, 100 R.I. 394, 399, 216 A.2d 357, 360 (1966). The *Draper* Court did not include a presence requirement. Indeed, our research has disclosed no case in which an "in the presence of" requirement has been held constitutionally indispensible to a valid arrest. *See Street* v. *Surdyka*, 492 F.2d 368 (4th Cir. 1974); *Diamond* v. *Marland*, 395 F. Supp. 432 (S.D. Ga. 1975); *United States* v.

*Grosso*, 225 F. Supp. 161 (W.D. Pa. 1964); *Lurie* v. *District Attorney of Kings County*, 56 Misc. 2d 68, 288 N.Y.S.2d 256 (1968).

We have said in *State* v. *Davis*, 105 R.I. 247, 251 A.2d 394 (1969), that article 1, §6 of our state constitution has the same effect as the fourth amendment of the Federal Constitution. We, therefore, conclude that §12-7-3(c) is constitutionally sound and an arrest thereunder, to the extent that it meets the requirement of probable cause, does not violate constitutional standards.

We now address defendant's claim that his arrest was illegal because the statutory requirements of §12-7-3(c) were not met. It is clear that in the circumstances of this case the arresting officers possessed information which would warrant a man of reasonable caution to believe that defendant had been driving under the influence of alcohol. See *Draper* v. *United States*, 358 U.S. at 313, 79 S. Ct. at 333, 3 L. Ed. 2d at 332. However, the evidence in the record before us is not sufficient to establish that defendant had fled the scene of the crime. Movement away from the officer without more does not constitute flight within the meaning of subsection (c). We, therefore, conclude that the arrest in this case was illegal.

### III

Having concluded that the arrest was illegal, we must now address the admissibility into evidence of the results of the breathalyzer examination conducted at the police station following that arrest.

It is clear that the administration of the examination constituted a search within the meaning of the fourth amendment. *Schmerber* v. *California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908, 918 (1966). The function of the fourth amendment is "to protect personal privacy and dignity against unwarranted intrusion by the State." *Id.* at 767, 86 S. Ct. at 1834, 16 L. Ed. 2d at 917. The issue then is whether

the taking of a breath sample constituted an unwarranted intrusion in the circumstances of this case.

A search conducted without a warrant may be valid if the search was conducted incident to a lawful arrest, pursuant to a valid consent, or in circumstances falling within a well-recognized exception to the warrant requirements. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854, 858 (1973).

The State in the case at bar contends that the search at issue falls within the consent exception to the warrant requirement. It relies not upon actual consent but upon the implied consent codified in §31-27-2.1. That reliance is misplaced. It is clear that the consent described in section 31-27-2.1 is applicable only in license revocation proceedings.

Section 31-27-2(b) describes the conditions under which the results of a chemical analysis of a defendant's breath, blood or urine may be admitted into evidence in a criminal proceeding. That statute provides in pertinent part:

> "(b)   In any criminal prosecution for violation of paragraph (a) of this section, evidence as to the amount of intoxicating liquor * * * in the defendant's blood at the time alleged as shown by a chemical analysis of the defendant's breath, blood or urine or other bodily substance shall be admissible and competent provided that evidence is presented that the following conditions have been complied with.
>
> "(1)   The defendant had consented to the taking of the test upon which said analysis is made. Evidence that the defendant had refused to submit to said test shall not be admissible unless the defendant elects to testify."

In *State* v. *Leavitt,* 103 R.I. 273, 237 A.2d 309 (1968), this court stated that, because an accused's consent to a search is a waiver of the protection guaranteed to him under our State and Federal Constitutions, such waiver will never be

presumed. *Id.* at 289, 237 A.2d at 318. We conclude, therefore, that consent within the meaning of §31-27-2(b)(1) must be actual and may not be implied. Where the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of demonstrating that the consent was "freely and knowingly given, uninduced by not only actual but implied duress." *Id.* at 289, 237 A.2d at 318; *Schneckloth* v. *Bustamonte,* 412 U.S. at 222, 93 S. Ct. at 2045, 36 L. Ed. 2d at 860; *cf. State* v. *LaRosa,* 112 R.I. 571, 575-76, 313 A.2d 375, 377 (1974). The State in this case has not borne that burden. Evidence of the results of the breathalyzer examination is, therefore, inadmissible.

### IV

Because we have concluded that the arrest was illegal and the breathalyzer results inadmissible, we need not consider the defendant's claim that §31-27-2(b)(3) requires that the results of the breathalyzer examination must be sent by certified mail.

The defendant's appeal is sustained, the judgment entered below is reversed, and the case is remanded to the Superior Court.

*Julius C. Michaelson,* Attorney General, *E. Martin Stutchfield,* Special Assistant Attorney General, for plaintiff.

*Aram K. Berberian,* for defendant.