John E. DAVIS, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 4511.

District of Columbia Court of Appeals.

Argued July 15, 1968.

Decided Nov. 12, 1968.

---

2. Reversed on rehearing on other grounds. 124 A.2d at 589.

---

Bernard W. Kemp, Washington, D. C., for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, Hubert B. Pair, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

David P. Sutton, Asst. Corp. Counsel, also entered an appearance for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge:

Two police officers came upon appellant asleep in his damaged automobile which was partially on the sidewalk, a few feet from a freshly damaged tree. Appellant was invited out of the car and into the patrol wagon to await the arrival of the Accident Investigation Unit. He was subsequently arrested, inter alia, for driving while under the influence of intoxicating liquor.[1] A jury convicted appellant of the charge and he appeals.

The single error alleged is the admission in evidence of a urine specimen taken at the precinct after arrest, over the objection that it was involuntarily given.

Appellant first contends that the specimen and its analysis were inadmissible on constitutional grounds. On this point, however, we are bound by the majority decision in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In Schmerber a blood sample was taken from defendant at the direction of a police officer over his objection, on advice of counsel, and the report of the analysis of the sample, indicating intoxication, was admitted into evidence at trial. The Supreme Court held that there was no violation of defendant's Fourteenth Amendment right to due process of law,[2] of his Fifth Amendment privilege against self-incrimination, of his Sixth Amendment right to counsel, or of his Fourth Amendment right to be free from unreasonable searches and seizures.[3] The rationale of Schmerber applies equally to the case before us. It was, in part, anticipated in United States v. Nesmith, 121 F.Supp. 758, 762 (D.D.C.1954), where, in a manslaughter case presenting a like question of the admissibility of a urinalysis report, the court concluded that

> The law is clear, therefore, that the privilege against self-incrimination is limited to the giving of oral testimony. It does not extend to the use of the defendant's body as physical or real evidence. The conclusion is inevitable that it does not bar the use of secretions of

---

1. D.C.Code 1967, § 40–609(b).

2. The due process clause of the Fifth Amendment is applicable in this case. See United States v. Townsend, 151 F. Supp. 378, 386–387 (D.D.C.1957).

3. See also Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), where the analysis of blood extracted from an unconscious defendant was held to be admissible.

the defendant's body and the introduction of their chemical analysis in evidence.

Such physical evidence obtained from the defendant's body has been excluded on constitutional grounds only where the conduct used to obtain the evidence was outrageous, unreasonable and offensive to a sense of justice. In Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), upon which appellant relies, morphine capsules were forcibly extracted from defendant's stomach, and the court held that this type of conduct violated the due process clause of the Fourteenth Amendment. In United States v. Willis, 85 F.Supp. 745 (S.D.Cal.1949), similar conduct was held to be an unreasonable search and seizure under the Fourth Amendment. In United States v. Townsend, 151 F.Supp. 378 (D.D.C.1957), the court excluded evidence, as violative of due process under the Fifth Amendment, of tests taken of a defendant who had been beaten at the police station, denied the right to consult his attorney, and had his arm twisted behind his back while his private parts were tested for the presence of blood.

■ No such outrageous conduct was shown in the case before us. At trial, during direct examination of the arresting officer, a Miranda [4] question arose. The trial judge excused the jury and there ensued an extensive hearing on the validity of the arrest and the admissibility of certain statements made by the defendant to the police.[5] Simultaneously, the court took testimony to determine whether or not the urine specimen was voluntarily given. Despite some contradiction in the testimony it was shown that the arresting officer thought that appellant was not capable of comprehending all that was happening to him but only some part; that appellant was upset and sobbing; that appellant was told he did not have to take the test but that if he did not it would be his word against the policeman's, and that if he took the test and it turned out negative the charges against him would be dropped. The officer did refer to himself as a "con-man" in his efforts to persuade appellant to give a specimen, yet there was no evidence whatsoever of any physical abuse or invasion of the appellant's person. In our judgment, this is not conduct which clearly offends a sense of justice or can be termed outrageous.

■ Appellant seeks to distinguish Schmerber from the present case on the ground that the urine specimen here was not taken under the supervision of a medical doctor at a hospital. However, such precautions are not required by statute in the District of Columbia for urine or breath tests [6] and the compelling reasons for medical supervision of the extraction of blood do not exist for the giving of a urine specimen or breath sample.

Appellant further asserts that even if the evidence was not constitutionally inadmissible, its admission in evidence is barred by the language of D.C.Code 1967, § 40–609a (e), which reads that

Nothing in this section shall be construed to require any person to submit to the withdrawal of blood, the taking of a urine specimen from him, or to a breath test.

In the legislative history of this section we find the following statement:

[T]he bill provides that nothing shall be construed so as to require any person to submit to the withdrawal of blood, the taking of urine specimen or to a breath test. The submittal must be entirely

---

4. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. These statements included an admission by appellant that he was driving the car and the statement that "I just fell asleep for a second, I had a few shots of bourbon." They were ruled to be inadmissible.

6. D.C.Code 1967, § 40–609a(c).

voluntary on the part of the person to be tested.[7]

Therefore, since appellant was not physically compelled to give the specimen, the question is whether the specimen was obtained through the use of psychological pressures upon a person who was so intoxicated as to be incapable of giving an informed consent to the test.

As has been said, there was an extensive hearing out of the presence of the jury to determine whether the specimen was voluntarily given. At this hearing the trial judge followed the procedure outlined in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and applied the standards by which we test the admissibility of confessions into evidence,[8] centering the inquiry on an attempt to determine if appellant understood that he could not be compelled to give the specimen and the possible consequences of its use at trial. The police officer testified, variously, that appellant could understand enough of what he was told to make an intelligent decision; that he could understand to a certain degree; that he could understand as far as one who is intoxicated can; that he understood at least seventy-five percent, and that given his condition of intoxication, it was improbable that appellant completely understood. The officer also testified that he used no deceit or promises in his attempt to obtain the specimen, but admitted, with commendable candor, that he wanted it and tried to talk appellant into giving it. At the conclusion of the hearing the court found beyond a reasonable doubt that the specimen had been given voluntarily and allowed the evidence to be introduced. The question of voluntariness was thereafter submitted to the jury.[9]

Without question the record indicates that the officer successfully used his considerable powers of persuasion to obtain the specimen from appellant. Yet we are unable to hold as a matter of law that appellant was required to submit to the taking of the specimen. From the record it is clear that the officer was justified in requesting the specimen, and the court made a factual determination that he employed reasonable means to obtain it. It is true that an intoxicated person may have less presence of mind and less comprehension of the consequences of any decision he is called upon to make than one who is sober. In addition, appellant was not ony inebriated, but was also of such an excitable nature that he began to cry when he realized the seriousness of his predicament. We are nevertheless of the opinion that the evidence of record permitted a finding by the court that the specimen was voluntarily given and hold that its admission in evidence was not error.[10]

Affirmed.

7. H.R.Rep. No. 1202, 85th Cong., 1st Sess. 3 (1957). The purpose of § 40–609a was to eliminate the necessity of having expert testimony in each case to interpret the result of a urinalysis. Lister v. England, D.C.App., 195 A.2d 260 (1963). While in this jurisdiction submission to the test must be voluntary, sim'lar statutes in some states provide that persons who drive on the public highways, if arrested, are deemed to have consented to a test. See, e. g., Va.Code Ann. § 18.1–55.1(b) (1968 Cumulative Supp.).

8. Before the present statute was passed, this court had decided that giving a urine specimen was not the same, from an evidentiary standpoint, as making a confession. Ridgell v. United States, D.C. Mun.App., 54 A.2d 679 (1947). It should also be noted that the element of possible untrustworthiness of a coerced confession is not present in a scientific analysis of a urine specimen, although the effect of its admission in evidence can be equally incriminating.

9. Appellant did not testify at the hearing. He did give testimony before the jury to the effect that he was warned of his rights and remembered "most" of the explanation, but that he did not give the specimen willingly because he was told he would have to sign some papers and would lose his permit if he did not give it.

10. In view of this disposition we do not reach the Government's contention that the common law permits the introduction of evidence illegally obtained as long as constitutional rights are not violated.