Barry ALLEN, Andrew Despain, Michael McQuillen, John Towns, Stanley Almon, and Jay Jenkins

v.

CITY OF MARIETTA, Jack Crane, Individually and in his Official Capacity as City Manager, Kemp Dickerson, Individually and in his official capacity as Superintendent of Electrical Distribution of the Board of Marietta Lights & Water, and Larry Thompson, Individually and in his official capacity as Personnel Manager of the City of Marietta, Gene Cantor, Individually and in his Official Capacity as Safety Officer for the Electrical Distribution of the Marietta Board of Lights and Water, Ruppert Ranes, Individually and in his official capacity as Assistant Chief of Police of the City of Marietta, and the Marietta Board of Lights and Water.

Civ. A. No. C83–1878A.

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 4, 1985.

Ralph Goldberg, Atlanta, Ga., for plaintiffs.

Dennis J. Webb, Kent T. Stair, Dennis, Corry, Webb, Carlock & Williams, Atlanta, Ga., Lynn A. Downey, Joseph C. Parker, Downey, Cleveland, Moore & Parker, W.R. Robertson, III, Marietta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court on plaintiffs' March 1, 1984 motion for partial summary judgment; the motion by all defendants except Dr. Williams for summary judgment or partial summary judgment; and plaintiffs' motion for leave to file an additional brief. The latter motion seeks leave to file a brief addressing the impact of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), on plaintiffs' claims. As plaintiffs' motion is unopposed by defendants and as the court believes that the additional brief will be helpful to resolution of the complex issues involved in this case, plaintiffs' motion for leave to file an additional brief is GRANTED. The brief filed on November 1, 1984 is hereby accepted as filed and will be considered by the court in this order.

The remaining two motions are not resolved so easily and require more extensive discussion.

## I. FACTS.

Plaintiffs in this case are all former employees of either the Marietta Board of Lights and Water or of the City of Marietta. Plaintiffs contend they were employed by the City while defendants contend that plaintiffs were employed solely by the Board of Lights and Water. The Board is a corporate body created by state law and has the power to sue and be sued. Its membership consists of various top officials of the Marietta City Government. The precise relationship between the Board and the City has not been made clear to the court. The individual defendants are Jack Crane, Marietta City Manager and Manager of the Board of Lights and Water; Larry Thompson, Personnel Manager of the City of Marietta and the Board of Lights and Water; Kemp Dickerson and Gene Cantor, the Superintendent and Safety Officer of the Electrical Distribution Division of the Board of Lights and Water, respectively; and Rupert Raines, the Assistant Chief of Police of the City of Marietta.

The facts giving rise to plaintiffs' cause of action have not been made particularly clear to the court. As best as the court can determine from the voluminous pleadings in this case, the following facts appear to be uncontested. All of the plaintiffs worked in the Electrical Distribution Division of the Board of Lights and Water and worked around high voltage electric wires. Sometime in late 1980 or early 1981 defendant Crane, who was the City Manager of the City of Marietta and the manager of the Board of Lights and Water, began receiving reports from various sources of drug usage by employees of the Board. Crane formed the belief that such drug usage may have been responsible for what appeared to be a large number of injuries to Board employees. Crane formed the belief that, given the extremely hazardous nature of the work done by the employees, such drug usage on the job constituted a threat to the safety of the employees and the general public, and he commenced an undercover investigation to determine which employees were using drugs on the job. An undercover agent was planted in the Electrical Distribution Division but was quickly recognized by some of the employees as a narcotics agent and was allegedly threatened. Transcript of Proceedings before Marietta Pension Board at 43–44. That agent was replaced by a person named Keith Ranger. Ranger had apparently been an informer for the City on other occasions in the past. Ranger went to work in the Electrical Distribution Division and allegedly smoked marijuana with various employees on and off the job and gathered information about drug use in the division. He kept records of which employees he observed smoking marijuana and the dates on which he observed them. He submitted his reports to Kemp Dickerson, the Superintendent of Electrical Distribution. Dickerson allegedly noticed a correlation between the names turned in by Ranger and people who had had "unexplained" accidents.

Based upon the information he had been provided by Ranger, Dickerson, and Larry Thompson, the Personnel Manager, Crane eventually decided that he had sufficient evidence to terminate some sixteen employees for use of drugs on the job. These employees were called together on July 12, 1983 and given an opportunity to resign. When none of the employees volunteered to resign, Crane advised them that they would be fired unless they chose to take a urinalysis test. Defendants' July 26, 1984 Statement of Material Facts Not in Issue, ¶ 4. All six plaintiffs elected to take the urinalysis test. Each of the plaintiffs went into a bathroom stall and urinated into a glass jar. The jars were labeled and sent away for analysis. The test results were received two days later on July 14, and showed that each of the plaintiffs in this action tested positive for the presence of marijuana in their bodies. All six plaintiffs were fired, although the date on which

they were fired is unclear.[1] Because of the confusion concerning the date of termination, it is somewhat unclear whether the test results were considered by Crane in deciding whether to terminate plaintiffs, or whether he terminated them based upon the information he had already received from Ranger.

On September 7, 1983 plaintiffs filed this lawsuit under 42 USC § 1983 for the deprivation of rights secured by the fourth and fourteenth amendments to the United States Constitution. Count I of plaintiffs' complaint asserts that the urinalysis test administered on July 12, 1983 was an unreasonable search and seizure in violation of the fourth amendment. Count II asserts that the firing of each plaintiff was arbitrary and capricious and denied each plaintiff his substantive due process rights under the fourteenth amendment. Count III appears to assert a claim for libel based on the fact that defendants publicized the fact that plaintiffs had been discharged for use of drugs on the job and did not give plaintiffs an opportunity to clear their names. Count III also appears to assert that the failure to provide a hearing to give the plaintiffs an opportunity to exonerate themselves constitutes a deprivation of procedural due process. Count IV asserts that plaintiffs were deprived of their property interest in their jobs without due process of law. Count V simply asserts a demand for a hearing. Count VI asserts a claim under Georgia law for violation of plaintiffs' right to privacy and right to be free of unreasonable searches and seizures.

Count VII, added by amendment on January 25, 1984, asserts a claim that defendants deprived plaintiffs of their rights to equal protection under the law because "similarly situated employees who had smoked marijuana on the job or [had] been intoxicated on the job were not fired." Count VIII, added by amendment on June 25, 1984, asserts a claim that defendants deprived plaintiffs of their first amendment rights of free association by prohibiting current Board employees from associating with plaintiffs.

On September 19, 1983, the Board of Lights and Water passed a resolution establishing a formal grievance procedure for its employees. This grievance procedure provided a four-step appeal process starting with the supervisor or department head and culminating, for claims of improper termination, with an appeal to the Pension Board of the Board of Lights and Water ("Pension Board").[2] The new grievance procedure provided that the decision of the Pension Board should be binding on all parties. Exhibit C to Plaintiffs' Motion for Partial Summary Judgment filed March 1, 1984; Plaintiffs' Statement of Undisputed Material Facts Number Three; Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts. Despite this provision, it appears that decisions of the Pension Board are appealable to the City Council.[3]

On October 10, 1983 plaintiffs requested through counsel a hearing before the Pension Board and requested that they be giv-

1. Barry Allen testified that the plaintiffs returned to work after the tests were administered and that they were not fired until after work on July 14. Allen Dep. at p. 36. However, the notice of termination for each of the plaintiffs except Stanley Almon has July 12, 1983, the date the tests were given, as the effective date of termination. However, each of these notices of termination has been altered by hand to provide that the effective date of termination was July 14, 1983, the date the test results were returned. Defendants have not explained why the date on each of these notices of termination was changed.

2. Prior to passage of this resolution on September 19, 1983, it appears that employees of the Board of Lights and Water who had a grievance had no right of appeal beyond the City Manager. Handbook of City Employees at p. 17 (Exhibit A to Affidavit of Larry Thompson filed May 4, 1984 in response to Plaintiffs' Motion for Partial Summary Judgment).

3. "Any person dissatisfied with any decision of the Pension Board shall have the right to appeal the decision to the (Marietta City) Council.... In ruling on any appeal from the Pension Board, the decision of the Pension Board shall be presumed correct and based upon sufficient facts to sustain it." City of Marietta Ordinance No. 3738, Section V (filed on May 4, 1984 in opposition to plaintiffs' motion for partial summary judgment).

en a notice of the cause for their termination and a list of the witnesses who would testify against them at the hearing and a description of the nature of their expected testimony. On October 12, each of the plaintiffs was sent a copy of their notice of termination. The explanation for each termination was the same: "Under influence of drugs while on job." The notice of termination was printed on stationery bearing the letterhead of the City of Marietta and contained a line for the City Manager's approval. This line was initialed by John Crane, the City Manager. On October 12, 1983, each of the plaintiffs was also sent a list of sixteen witnesses who would testify at the hearing and a brief description of the nature of their testimony. Virtually all of the witnesses were expected to offer "testimony relative to drug use on the job." Several were expected to testify concerning plaintiffs' job performance, physical appearance, and past accidents.

On October 20, 1983 the Pension Board met to hear the appeal of the plaintiffs. With the exception of Stanley Almon, all of the plaintiffs appeared at the hearing and were given the opportunity to testify in their own behalf and to present witnesses. All of the plaintiffs were represented by counsel. None of the plaintiffs testified in his own behalf or denied the charges against him. Plaintiffs did, however, cross-examine the witnesses against them and present one witness to testify in their behalf. On October 24, 1983 the Pension Board issued its decision finding unanimously that "John M. Crane, Board of Lights and Water Manager, had cause for his decision to terminate (the plaintiffs in this case) based on the information presented to him. Terminations upheld. Vote 8–0." Plaintiffs have apparently not appealed the decision of the Pension Board to the Marietta City Council.

By their present motion for partial summary judgment plaintiffs ask the court to rule as a matter of law that: (1) Plaintiffs were all employed by the City of Marietta as opposed to the Marietta Board of Lights and Water; (2) that none of the defendants are entitled to assert a good faith defense

to any of the claims asserted by plaintiffs; (3) that the urinalysis tests violated plaintiffs' rights secured by the fourth and fourteenth amendments; (4) that the urinalysis test results should have been excluded from the hearing before the Pension Board; (5) that the hearing before the Pension Board failed to satisfy the requirements of due process; and (6) that the termination of each plaintiff was arbitrary and capricious and was therefore a denial of each plaintiff's rights to substantive due process. Plaintiffs have not raised on this motion the merits of the claims contained in Count VII or Count VIII of the complaint.

Defendants have opposed plaintiffs' motion for partial summary judgment and filed their own motion for partial summary judgment. By this motion defendants ask the court to make the following rulings as a matter of law: (1) That plaintiffs were employed by the Board of Lights and Water and not by the City of Marietta; (2) that the individual defendants as well as the City and the Board of Lights and Water are entitled to assert a defense of good faith immunity to plaintiffs' claims brought under section 1983; (3) that the urinalysis tests did not violate any rights protected by the fourth and fourteenth amendment; (4) that plaintiffs were not deprived of either substantive or procedural due process in their termination; and (5) that plaintiffs have asserted no claims against certain of the individual defendants. Like plaintiffs, defendants have not addressed the merits of Count VII or VIII.

II. WHETHER PLAINTIFFS WERE EMPLOYED BY THE CITY OR BY THE BOARD OF LIGHTS AND WATER.

■ Defendants have vigorously argued that plaintiffs were employed by the Board of Lights and Water and that the Board of Lights and Water is a completely separate entity from the City of Marietta. Defendants argue, therefore, that the City is not a proper party to this action. Defendants have supported their argument by affidavits of John Crane, the Marietta City Manager, and Larry Thompson, the Personnel

Manager for the City of Marietta. Each of these defendants has testified through their affidavits that all of their actions taken in connection with the plaintiffs in this lawsuit were taken in their capacity as manager and personnel manager of the Board of Lights and Water. However, this testimony is rebutted by the fact that the termination notices each plaintiff received bore the letterhead of the City of Marietta and were initialed by John Crane in his capacity as City Manager. That it might be more convenient now to argue that Crane and Thompson were wearing their Board of Lights and Water hats does not change the fact that, by all appearances at least, Crane and Thompson seem to have been acting in their capacity as City employees. In any event, the court finds that a factual dispute exists concerning whether Crane and Thompson were acting in their capacity as City officials or whether they were acting solely in their capacity as employees of the Board of Lights and Water. Such a factual dispute precludes summary judgment on this issue.

■ Defendants have further argued that even if Crane and Thompson were acting as City employees, the City cannot be held liable to plaintiffs under a theory of *respondeat superior.* While this is true as an abstract proposition, the court fails to see how a city manager and personnel manager acting within the scope of their official duties could not be said to be persons "whose edicts or acts may fairly be said to represent official policy." *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *McLaughlin v. City of LaGrange,* 662 F.2d 1385 (11th Cir.1981), *reh'g denied,* 668 F.2d 536, *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). In the event that Crane and Thompson are found at trial to have been acting in their capacity as city manager and personnel manager respectively for the City of Marietta, it is clear that their actions would bind the City. Therefore, the City is a proper party to this lawsuit.

Defendants have also argued that plaintiffs were not employed by the City of Marietta and were instead employed by the Board of Lights and Water, which they contend is a completely separate entity. While the precise relationship between the Board of Lights and Water and the City of Marietta has not been made clear to the court, there is clearly a great deal of overlap between the two entities. High officials of the city government perform identical functions for the board. Board employees were apparently covered by the city's employee benefit and retirement plans and could appeal grievances to the city manager whose decision was final. Finally, the handbook which each employee of the Board of Lights and Water was given contains the following statements:

*Welcome.*

We would like to congratulate you on your appointment with *the City of Marietta.* ...

*As a City Employee,* you are charged with the responsibility of performing your assigned duties to the best of your ability in a courteous and responsible manner. Your attitude and general conduct as observed by the public will reflect directly upon the department, division, and organization which you now represent.

This handbook has been prepared for your benefit as a means by which you may become completely familiar with the various aspects which will affect you *as a City Employee.*

We sincerely hope that you will succeed in your endeavor *as a City Employee* and that the City will benefit from your contribution as a member of this organization.

Sincerely,
Mayor and Council
City Manager

Exhibit A to Affidavit of Larry Thompson (filed May 4, 1984) (emphasis added). On the second page of the handbook under the heading of "information" appears the following statement:

The City of Marietta and the Marietta Board of Lights and Water comprise a joint operational organization commonly referred (to) as the "City." This organization of which you are now a member employs in excess of five hundred (500) full-time employees and serves some forty-three thousand (43,000) citizens and customers twenty-four hours a day each and every day of the year. ... As outlined below on the organizational chart, the individual department in which you serve is part of a larger function under the direction of a department or division head. The department or division head is responsible to the City Manager who serves as the organization's overall Administrator. The City Manager is responsible to the Governing Authority which is made up of the Mayor and Council.

The organizational chart which was supposed to appear on page three of the handbook was not included with the handbook which was made a part of the record in this case. *See* Exhibit A to Affidavit of Larry Thompson, filed May 4, 1984 in opposition to Plaintiffs' Motion for Partial Summary Judgment.

■ The Georgia courts have held that control over the employee "is the prime indicia of an employer-employee relationship." *Employees Retirement System v. Baughman*, 241 Ga. 339, 340, 245 S.E.2d 282 (1978); *See Griffin v. Hardware Mutual Insurance Co.*, 93 Ga.App. 801, 803–04, 92 S.E.2d 871 (1956). Although the court believes the evidence weighs heavily toward a finding that under this standard plaintiffs were City employees, the court concludes that the factual dispute as to whether defendants Crane and Thompson were acting for the Board or for the City precludes summary judgment on this issue. Obviously, if Crane was acting in his capacity as City Manager when he ordered plaintiffs to submit to the urinalysis and when he fired them, then the City exercised control over plaintiffs. *Employees Retirement System v. Baughman, supra.* Such control would be an excellent indicia that plaintiffs were City employees. In any event, both plaintiff's and defendants' motions for summary judgment as to this issue are DENIED.

## III. WHETHER THE URINALYSIS TESTS WERE AN UNREASONABLE SEARCH AND SEIZURE WITHIN THE MEANING OF THE FOURTH AMENDMENT.

### A. *Whether a Urinalysis is a Search or Seizure.*

■ The fourth amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

The first question to be determined is whether the urinalysis test administered in this case was a search or seizure within the meaning of this amendment. While the court has some doubts whether requiring a person to provide a sample of his urine for analysis is the kind of "search" contemplated by the framers of the fourth amendment, the court feels constrained by current law to hold that a urinalysis is a search within the meaning of that amendment. In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) the Supreme Court held that the extraction of a blood sample from a defendant for purposes of determining his state of intoxication was a search within the meaning of the fourth amendment. While the extraction of blood from an unwilling defendant is qualitatively different from a requirement that an individual provide the government samples of his biological waste products, other courts have applied *Schmerber* to breathalyzer tests, in which a person is asked to provide samples of his breath, *see State v. Locke*, R.I., 418 A.2d 843 (1980); *State v. Berker*, 120 R.I. 849, 391 A.2d 107 (1978); *Davis v. District of*

*Columbia,* 247 A.2d 417 (D.C.Ct.App.1968). The Eleventh Circuit Court of Appeals has held that detention of persons suspected of smuggling contraband in their stomachs until the contraband is expelled in a bowel movement in a search and seizure within the meaning of the fourth amendment. *See, e.g., United States v. Mosquera-Ramirez,* 729 F.2d 1352 (11th Cir.1984). Although the search in *Mosquera-Ramirez* was upheld as reasonable, it was, nevertheless, a search within the meaning of the fourth amendment. Finally, at least two cases have treated urinalysis tests as searches within the meaning of the fourth amendment. *See Division 241 Amalgamated Transit Union (AFL–CIO) v. Suscy,* 538 F.2d 1264 (7th Cir.), *cert. denied,* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976); *Ewing v. State,* 160 Ind.App. 138, 310 N.E.2d 571 (1974). Based on the above cases the court holds in the present case that a urinalysis test is a search and seizure within the meaning of the fourth amendment.

B. *Whether the Search was Unreasonable.*

It is undisputed that no warrant was obtained prior to the administration of the urinalysis test. The Supreme Court has held that warrantless searches "are *per se* unreasonable under the fourth amendment—subject only to a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971). Most of the exceptions to the warrant requirement involve some sort of exigent circumstances, such as an immediate danger to the police officers or to the community, *see, e.g., Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or the risk that the evidence could vanish or be destroyed while a warrant is being obtained. *See Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). One of the exceptions to the warrant requirement which appears to have emerged is a class of cases involving searches of government employees. The cases are not uniform, but all appear to involve a balancing of the individual's expectation of privacy against the government's right as an employer (as opposed to the government's right as a law enforcer) to investigate employee misconduct which is directly relevant to the employee's performance of his duties and the government's performance of its statutory responsibilities. Thus, a warrantless search of a Customs' employee's jacket was held reasonable where his supervisors had grounds to believe he was pilfering goods coming through customs. *United States v. Collins,* 349 F.2d 863 (2d Cir.1965), *cert. denied,* 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303, *reh'g denied,* 384 U.S. 947, 86 S.Ct. 1469, 16 L.Ed.2d 545 (1966). A warrantless search of a postal employee's locker for stolen mail was upheld as a reasonable search in *United States v. Bunkers,* 521 F.2d 1217 (9th Cir.), *cert. denied,* 423 U.S. 989, 96 S.Ct. 400, 46 L.Ed.2d 307 (1975) and in *United States v. Sanders,* 568 F.2d 1175 (5th Cir.1978). In *United States v. Grisby,* 335 F.2d 652 (4th Cir.1964) a warrantless search of a Marine corporal's living quarters was upheld as a proper exercise of military authority and in *United States v. Donato,* 269 F.Supp. 921 (E.D. Pa.), *aff'd,* 379 F.2d 288 (3d Cir.1967), a warrantless search of a United States Mint employee's locker was sustained as justified in order to maintain the order and security of the Mint.

In other cases, however, the courts have held warrantless searches of government employees to be in violation of the fourth amendment. *See, e.g., United States v. Hagarty,* 388 F.2d 713 (7th Cir.1968); *United States v. Blok,* 188 F.2d 1019 (D.C. Cir.1951); *United States v. Kahan,* 350 F.Supp. 784 (S.D.N.Y.1972), *aff'd in part and rev'd in part,* 479 F.2d 290 (2d Cir. 1973), *rev'd,* 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974). In *Blok* the District of Columbia police had searched appellee's desk without a warrant for evidence of petty larceny. The court of appeals concluded that the warrantless search violated the fourth amendment but emphasized that although appellee had a legitimate expectation of privacy in her desk, some warrant-

less searches of the desk would be reasonable:

> We think appellee's exclusive right to use the desk assigned her made the search of it unreasonable. No doubt a search of it without her consent would have been reasonable if made by some people in some circumstances. Her official superiors might reasonably have searched the desk for official property needed for official use. But as the Municipal Court of Appeals said, the search that was made was not "an inspection or search by her superiors. It was precisely the kind of search by policemen for evidence of crime against which the constitutional prohibition was directed." In the absence of a valid regulation to the contrary appellee was entitled to, and did keep private property of a personal sort in her desk. Her superiors could not reasonably search the desk for her purse, her personal letters, or anything else that did not belong to the government and had no connection with the work of the office. Their consent did not make such a search by the police reasonable. Operation of a government agency and enforcement of criminal law do not amalgamate to give a right of search beyond the scope of either. *United States v. Blok*, 188 F.2d at 1021.

The court in *Blok* drew a distinction between a search made by the government as employer for things belonging to the government or which were connected with the work of the office and a search undertaken for a law enforcement investigatory purpose. In *United States v. Hagarty*, 388 F.2d 713 (7th Cir.1968), the court applied a similar logic in ruling that evidence obtained as a result of a warrantless wiretap of a government employee's conversation was inadmissible in a subsequent perjury trial. The government had argued that "the fourth amendment does not apply to the search of governmental premises in the course of an investigation relating to the conduct of governmental business." The court rejected this argument and found that the search by the investigators was "part of an effort to secure evidence of crime" and was therefore the kind of search prohibited by the fourth amendment. *See* 388 F.2d at 717–18.

Finally, in *United States v. Kahan*, 350 F.Supp. 784 (S.D.N.Y.1972), *aff'd in part and rev'd in part*, 479 F.2d 290 (2d Cir. 1973), *rev'd*, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974), the court excluded from trial incriminating evidence found in the wastepaper basket underneath defendant's government desk where the search of defendant's wastepaper basket had been made by criminal investigators who had searched defendant's wastepaper basket everyday for more than six months. The court focused on the criminal investigatory nature of the investigation and found that the "criminal investigator's express purpose in rummaging through the wastepaper basket was to obtain evidence which could be used to prove the defendant guilty of a crime." *Id.* at 791. The court pointed out that

> [t]his is not a case where an office supervisor or fellow employee in a government office is looking for some needed document or record and inadvertently happens upon incriminating evidence in the desk or wastepaper basket of another employee. Nor is it a situation where a supervisor is inspecting the area used by a subordinate in order to examine his work or to evaluate his performance on the job. There is no doubt that the government should be able to manage its agencies and offices effectively and without undue restrictions on the supervision of its employees. What would be normal in the supervision and control of employees in a private business should be allowable in government offices as well. Thus, to assure efficiency and honesty, government supervisors have authority to oversee the work of their employees. *Id.*

Finding the warrantless search of defendant's wastepaper basket to be in violation of the fourth amendment, the *Kahan* court excluded from use at trial the evidence obtained as a result of that search. *Id.* at 789–90.

■ This court believes that the theme underlying all of the cases discussing searches of government employees can be summarized as follows. Government employees do not surrender their fourth amendment rights merely because they go to work for the government. They have as much of a right to be free from warrantless government searches as any other citizens. At the same time, however, the government has the same right as any private employer to oversee its employees and investigate potential misconduct relevant to the employee's performance of his duties. Thus, a government employee's superiors might legitimately search her desk or her locker or her jacket where the purpose of the search is not to gather evidence of a crime unrelated to the employee's performance of her duties but is rather undertaken for the proprietary purpose of preventing future damage to the agency's ability to discharge effectively its statutory responsibilities. Because the government as employer has the same rights to discover and prevent employee misconduct relevant to the employee's performance of her duties, the employee cannot really claim a legitimate expectation of privacy from searches of that nature. Added to this balancing of expectations and interests is the fact that government investigations of employee misconduct always carry the potential to become criminal investigations. As noted above, courts have been unwilling to find that the fourth amendment does not protect government employees from warrantless searches undertaken for a criminal investigatory purpose.

■ While an inquiry into the motivations of the government in conducting a warrantless search of government employees will in many cases be a subjective factual question for the trier of fact, in the present case it presents no problem. Defendants' Statement of Material Facts Not in Issue contains the following statement:

The urinalysis in this case was conducted in a purely employment context and was not done in connection with any criminal investigation or procedure.

Plaintiffs' response is as follows:

Uncontested except insofar as defendant Raines was present as well as all other officers outside.

While the presence of Officer Raines at the urinalysis might have given rise to an inference of a law enforcement purpose for the urinalysis, plaintiffs have admitted that "his presence there was only to maintain order and more specifically to protect defendant Crane and others from any employee reaction." Defendants Statement of Material Facts Not in Issue, ¶ 17; Plaintiffs' Statement of Contested Facts, ¶ 17. Plaintiffs have never been charged with any crime as a result of the investigation, and the court finds no evidence whatsoever that the urinalysis tests in this case were conducted for any criminal investigatory purpose. The only facts before the court establish as a matter of law that the tests were administered in a purely employment context as part of the government's legitimate inquiry into the use of drugs by employees engaged in extremely hazardous work. The City has a right to make warrantless searches of its employees for the purpose of determining whether they are using or abusing drugs which would affect their ability to perform safely their work with hazardous materials. The court finds, therefore, that the urinalysis tests administered in this case were not unreasonable searches in violation of the fourth amendment. Plaintiffs' motion for summary judgment on this issue is DENIED and defendants' motion for summary judgment on this issue is GRANTED.

Because the court concludes that the urinalysis tests administered in this case did not violate the fourth amendment, there is no need to consider whether plaintiffs consented to the search. Warrantless searches of government employees for evidence of misconduct relevant to the employee's performance of his duties have been upheld even in the absence of consent. *See United States v. Collins,* 349 F.2d 863 (2d Cir.1965), *cert. denied,* 383 U.S. 960, 86

S.Ct. 1228, 16 L.Ed.2d 303, *reh'g denied,* 384 U.S. 947, 86 S.Ct. 1469, 16 L.Ed.2d 545 (1966). It is also unnecessary to consider plaintiffs' arguments that the test results should have been excluded from use at the hearing before the Pension Board, as the exclusionary rule has no applicability where the evidence was not obtained in violation of the fourth amendment.

IV. WHETHER PLAINTIFFS WERE DENIED PROCEDURAL DUE PROCESS.

Plaintiffs contend that they were deprived of their jobs without procedural due process. Defendants apparently concede that plaintiffs had a protected property interest in their jobs. Marietta City Ordinance No. 3394 provides in pertinent part:

Any employee may be suspended, demoted or dismissed for just cause subject to approval of the City Manager. Just cause shall include, but shall not be limited to: delinquency, negligence, insubordination, work slow-down, inefficiency in performance or inability to perform assigned duties, unauthorized absences, *conduct undermining the operations of the city, or violations of the city's safety regulations.*

A permanent employee whose work is not satisfactory over a period of time shall be notified by his department head as to the problem and deficiency. If, after reasonable notice, the permanent employee fails to perform up to the requirements and standards of the classification held, the incumbent may be demoted or dismissed.

All employees shall be subject to immediate dismissal when the actions of the employee are construed by the City Manager to be so malicious or flagrant as to constitute a hazard to the effective operation of city services.

The employee handbook given to every City employee, including employees of the Board of Lights and Water, contained a Comprehensive Safety Program. Section II of this Comprehensive Safety Program contains the following information:

SECTION II: *Safety Rules and Regulations.* The purpose of this section is to establish and maintain safety rules and regulations for the welfare and benefit of all City employees, to insure a safe working environment, and maintain efficient services to the citizens and customers of the City of Marietta and the Board of Lights and Water.

A. Application.

1. Every employee shall carefully study (not merely read) those safety rules applicable to his duties. Compliance with these safety rules is mandatory and is considered a requirement for employment.

. . . . .

D. Intoxicating Beverages and Drugs.

Use of intoxicating beverages or drugs on city premises or on the job or during working hours is prohibited and shall be sufficient cause for disciplinary action. Any employee under the influence of intoxicating beverages or drugs shall not be allowed on the job.

E. Conduct of Employees.

. . . . .

2. Any act deemed irresponsible or unsafe on the part of any employee of the City of Marietta or Board of Lights and Water which either causes or develops a potential to cause any form of injury or damage to persons or property either public or private under the normal scope of City or Board employment shall be grounds for immediate dismissal of said employee upon recommendation of the safety committee and approval of the City Manager.

The employment policies stated above make it clear that plaintiffs were employees who could not be dismissed except for good cause. They therefore had a property interest in their jobs. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Brownlee v. Williams,* 233 Ga. 548, 212 S.E.2d 359 (1975). Because plaintiffs had a property interest in continued employment with the City, they could not be deprived of their jobs without due process. Since it is apparent that plaintiffs were deprived of their

jobs by state action, the question then becomes whether they were deprived of their jobs without due process.

It is clear that plaintiffs did not receive any notice or opportunity to be heard prior to their termination. Plaintiffs were simply called in and informed that the City had evidence they had been using drugs on the job and that they could resign or be fired. It is also clear, however, that plaintiffs were not necessarily entitled to any pre-termination hearing despite the fact that they had a property interest in their jobs. Plaintiffs were subject to immediate dismissal for certain kinds of conduct which threatened the health or safety of other employees or the general public. In any event, even if drug use on the job was not the sort of conduct justifying dismissal without a prior hearing, plaintiffs have conceded that an adequate post-termination hearing would cure the absence of a pre-termination hearing. *See* Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment at p. 3; *see also Best v. Boswell,* 696 F.2d 1282, 1288–89 (11th Cir.), *reh'g denied,* 703 F.2d 582, *cert. denied,* —— U.S. ——, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983); *Glenn v. Newman,* 614 F.2d 467 (5th Cir. 1980). The court, therefore, must examine whether the process afforded plaintiffs after their termination was sufficient to satisfy the dictates of the due process clause.

At the time plaintiffs were terminated the City had a three-step grievance procedure. The final step in this procedure was an appeal to the City Manager whose decision was binding on all parties. As it was the City Manager who terminated them, this grievance procedure did not represent much of an opportunity for dispassionate review of the deprivation of plaintiffs' jobs. After this lawsuit was filed, however, the Board of Lights and Water passed a resolution implementing a new grievance procedure. The first three steps of the new procedure are the same as the old three-step procedure, except that the final appeal

is to the Board Manager instead of the City Manager. As the Board Manager and the City Manager are the same person, this does not represent much of a change. The new grievance procedure, however, added an appeal from the decision of the City Manager/Board Manager to the Pension Board of the Board of Lights and Water ("Pension Board").[4] In light of the fact that plaintiffs did not receive a pre-termination hearing and the fact that the post-termination grievance procedure in place at the time of their discharge was facially inadequate to satisfy the requirements of due process, defendants graciously offered to allow plaintiffs a hearing before the Pension Board and allowed them to waive the first three steps of the grievance procedure.

Each of the plaintiffs accepted the offer to have their terminations reviewed by the board. Each of the plaintiffs was informed that the reason for their termination had been use of drugs on the job and each was given a list of the witnesses who would testify at the hearing and a brief description of the nature of the testimony each witness would offer. While plaintiffs have attacked the sufficiency of the descriptions given, the court finds that the list provided by defendants was sufficient to give plaintiffs fair notice of the charges against them and was sufficient to give plaintiffs an opportunity to prepare to defend themselves against the charges of drug use on the job.

Plaintiffs were represented at the hearing by the same counsel who represents them in this lawsuit. Counsel cross-examined the witnesses who testified against plaintiffs and was allowed to put on any witnesses who could testify in plaintiffs' behalf. Each of the plaintiffs, with the exception of Stanley Almon who was incarcerated at the time, was present at the hearing and had the opportunity to speak

---

**4.** This Pension Board appears to be the same entity as the City of Marietta Pension Board, despite its title. When it heard plaintiff's appeal it met as the City of Marietta Pension Board.

See Transcript of Proceedings before the City of Marietta Pension Board, Title Page (filed March 1, 1984).

in his own defense and to deny the charges against him. None of the plaintiffs did so. Plaintiffs now contend that they did not testify because they did not feel that the City had made out a case against them and because they felt the hearing was a sham. The essential elements of due process are notice and a fair opportunity to be heard. It is apparent that plaintiffs had reasonable notice of the charges against them prior to the post-termination hearing and were given a fair opportunity to refute the charges. That plaintiffs did not testify or deny the charges against them is not the fault of defendants.

Plaintiffs contend that they were deprived of due process when the Pension Board failed to give them specific reasons for their decision to affirm their termination. The Pension Board's decision simply states without elaboration the board's unanimous finding that John Crane had cause for his decision to terminate plaintiffs based on the information presented to him. While greater elaboration would be desirable, and may even be required by Georgia law, see Brownlee v. Williams, 233 Ga. at 556, 212 S.E.2d 359, plaintiffs could have appealed the decision of the Pension Board to the Marietta City Council. Marietta City Ordinance No. 3738. The decision by the City Council affirming or denying the decision of the Pension Board would have been appealable to the Superior Court of Cobb County by a writ of certiorari. See City of Cedartown v. Pickett, 193 Ga. 840, 20 S.E.2d 263 (1942); O.C.G.A. § 5-4-3.

■ It is apparent to the court that the procedures now in place for appeal of termination decisions are sufficient to satisfy the requirements of notice and a fair opportunity to be heard. Indeed, plaintiffs do not challenge the process itself except insofar as they contend they were entitled to more specific findings by the Pension Board. Plaintiffs' complaint concerning the findings of the Pension Board and concerning the sufficiency of the evidence presented against them are more appropriately addressed to the Georgia courts. As

this court observed in Lee v. Hutson, No. C84–179A (N.D.Ga. October 10, 1984), "it is not the role of a federal district court to act as a court of appeal from decisions of state quasi-judicial bodies where the state has provided avenues of appeal which the litigant did not utilize." The court's analysis in Lee v. Hutson of the effect of the existence of adequate state judicial remedies on a procedural due process claim is applicable to this case and is expressly adopted. See also Collins v. Collins, 597 F.Supp. 33 (N.D.Ga.1984). As the Supreme Court stated in Bishop v. Wood, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976):

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The due process clause of the fourteenth amendment is not a guarantee against incorrect or ill-advised personnel decisions.

Because the court concludes that plaintiffs have been accorded a fair opportunity to rebut the charges against them and that they have failed to utilize avenues of appeal available to them, the court holds that plaintiffs were not deprived of their jobs without due process. Plaintiffs' motion for summary judgment as to this issue is DENIED, and defendants' countervailing motion is GRANTED.

## V. WHETHER PLAINTIFFS WERE DENIED SUBSTANTIVE DUE PROCESS.

■ Plaintiffs argue that there was no substantial evidence presented at the hear-

ing that each of the six plaintiffs had smoked marijuana on the job. However, as noted above, it is not the role of this court to engage in an appellate review of the decision by the Pension Board when other avenues of judicial appeal have not been utilized. Even assuming that the evidence presented against plaintiffs was insufficient to justify their termination, plaintiffs have not been deprived of due process because further process was due. Even if this court were disposed to undertake the appellate function of reviewing the evidence presented at the hearing, the court would find that evidence was presented to the effect that each plaintiff had used drugs on the job. It is not the role of this court to evaluate the weight and credibility to be accorded such evidence.

It is important to point out that plaintiffs were not terminated for exercising protected rights. They were terminated for use of drugs on the job in violation of City policy. The City had evidence of such drug use and could reasonably conclude that such drug use constituted a threat to the safety of the community. Plaintiffs were given a full and fair opportunity to attack that evidence and its credibility. The process for the adjudication of the grounds for their termination satisfied the requirements of procedural due process. State judicial avenues of appeal of the errors presently alleged have not been utilized. On these facts the court cannot find that the firing of plaintiffs was arbitrary and capricious or that their due process rights have been violated. Plaintiffs' motion for summary judgment on their claim for deprivation of substantive due process is DENIED, and defendants' countervailing motion for summary judgment is GRANTED.

## VI. CONCLUSION.

To summarize, the court holds the following: (1) A factual dispute exists as to whether plaintiffs' were employed by the City of Marietta and as to whether defendants Crane and Thompson were acting in their capacity as City employees or Board employees; until this dispute is resolved, the City of Marietta is a proper party defendant to this action; (2) the urinalysis test administered in this case was a search but was not unreasonable and therefore did not violate the fourth amendment; (3) the exclusionary rule did not require the exclusion of the test results from the hearing before the Pension Board; (4) plaintiffs were accorded a full and fair hearing on the grounds for their discharge and were not deprived of procedural due process; and (5) plaintiffs were not denied substantive due process. Based on the above rulings, the court hereby DISMISSES Counts I, II, III, IV, and V of plaintiffs' complaint. Count VI of plaintiffs' complaint, which asserts a cause of action for violation of plaintiffs' rights under the Georgia Constitution to be free from unreasonable searches and seizures is DISMISSED solely on the grounds that plaintiffs failed to oppose that portion of defendants' motion for summary judgment. *Cf. Simon v. Kroger Company,* 743 F.2d 1544 (11th Cir.1984). Counts VII and VIII of plaintiffs' complaint as amended are not before the court at this time.

In sum, plaintiffs' motion for leave to file an additional brief is GRANTED. Plaintiffs' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART. Defendants' motion for partial summary judgment is also GRANTED IN PART and DENIED IN PART. The consolidated pretrial order, which would normally be due 30 days after the filing date of this order, shall not be due until thirty (30) days after the court rules upon plaintiffs' motion for partial summary judgment as to their equal protection claim, which motion has not yet been submitted for a ruling by the court.